# FEDERAL DISCTRICT COURT

## FOR THE DISCTRICT COURT OF MASSACHUSETTS

ss. Worcester                                                    Case No.


Hitesh (Harry) Harjani, pro se,
Nicholas Fiorillo, pro se,
Gatsbys Chop House, LLC,
with assignment of claims

Plaintiffs,
v.
GGP-Natick West L.L.C.,
Brookfield Properties,
Nicholas Marona, Kathryn M. Coughlin,
Jennifer Kearney, Mark Rogers,
Timothy Peterson, Town of Natick,
Billy Walsh, Natick Board of Health,
John and Jane Does 1-12,
Attorney Anthony Moccia, Carlson Shea,
Judge Cunis, Burke, McManus, Queally, Chan
and John and Jane  Doe(s)  1-24

Defendants.

## COMPLAINT FOR WEAPONIZED LAWFARE CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983, RACKETEERING UNDER 18 U.S.C. §§ 1961-1968, AND PUBLIC CORRUPTION IN VIOLATION OF PRESIDENT TRUMPS CODIFIED EXECUTIVE ORDERS ENDING THE WEAPONIZED LAWFARE AGAINST AMERICAN CITIZENS BY THE CORRUPTED JUDICAL POLTICAL AND LAW ENFORCEMENT CABAL OF MASSACHUSETTS AND   DEMAND FOR JURY TRIAL ON THE MERITS BY PRO SE PLAINTIFFS HITESH (HARRY) NICHOLAS FIORILLO, THE MEMBERSHIP INTEREST HOLDERS OF GATSBY'S CHOP HOUSE, LCC WITH ASSIGNMENT OF INDIVIDUAL AND CORPORATE CLAIMS FOR A CONSPIRACY TO UNLAWFULLY EVICT AND USURP THE PLAINTIFFS RIGHTS TO 20 YEAR LEASE AND FEE SIMPLE INTEREST TENANT IN COMMON  OF THE REAL ESTATE AKA THE NATICK COLLECTIONS

VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL

This is not a lease dispute. This is the cold-blooded, state-sponsored murder of the American Dream inside a

Massachusetts courtroom. Hitesh (Harry) Harjani – an immigrant who arrived in this country with nothing and

built a chain of luxury fragrance and sunglass boutiques inside Brookfield malls – was personally recruited by

Brookfield executives to open Gatsby's Chop House, a $12.5 million high-end steakhouse that was supposed to become the crown jewel of the dying Natick Mall. He and his wife, Arielle Johnson, poured every dollar of savings and every sleepless night into making it real. On December 29, 2023, they signed a sweetheart lease: 80 % below-market rent for ten years with promise of additional 10 years as the inducement to invest in the project, with $250,000 in tenant-improvement credits, no rent the first year, and options stretching to 2045. They set out to re-launch the failed Soros backed "Met Bar and Grill" into a high end steak house, Gatsby's Chop House, all while running multiple other profitable stores inside Brookfield properties.

Within days of opening, the mask came off. Brookfield – drowning under a $480 million loan default on the Natick Mall – decided it needed someone else's success to survive and 10 times the monthly lease rate they had agreed to lease to Plaintiffs. So they launched a textbook, Soros-orchestrated eviction racket. They padlocked the restaurant after admitting tenancy under oath. They reneged on every credit. They conspired with the Town of Natick to revoke the hard-won All-Alcohol license through a dozen "deep-fake" hearings and the now-infamous "hook or by crook" threat recorded on September 17, 2025. And when the family fought back, Brookfield weaponized the Natick District Court itself. With Healey-appointed Judges Mark Cunis, Patrick K. Burke, Quealley, Chan and Maureen H. McManus – together with conflicted Clerk Brian Kearney (blood relative of Mall Manager Jennifer Kearney) and attorneys Anthony Moccia and Carl Shea – turned a public courtroom into a text book deep state Soros controlled Kangaroo Court.

They rejected over 14 emergency filings, issued forged "ghost orders," and on October 2nd , October 30th and December 9, 2025, in a scene that belongs in a dictatorship, Judge Cunis and Burke literally attempted and muted and video-disabled both pro se plaintiffs for the entire hearings while issuing rulings against them even with one Judge **"RUNNING OFF THE BENCH".** The court's own Zoom recording captures the moment: defendants begging to speak, microphones cut, video blacked out, and a supposed sham trial scheduled for December 11 while the plaintiffs remained forcibly silenced, the underlying case has been removed to Federal Court contemptuously

here with this new action. This was not incompetence. This was a coordinated, judicially weaponized lawfare attack enforced theft – a $12.5 million restaurant stolen with a gavel so Brookfield could re-lease the space to a connected insider and escape bankruptcy. As it's NO SECRET that George Soros sits at the top of this pyramid and controls the Governor Healey's Municipal Mafia and pulls the strings of the most corrupted judicial-political-law enforcement system in the United States. As it's Soros, Brookfiled and certain corrupted Town Select Board "Insiders" who are the true economic beneficiary of the failing mall through his distressed-debt funds and his attempts to get the down to reduce his annual real estate taxes by 40% and put it on the residence of Natick. It's no Secret Who is pulling the strings while his political operatives (Healey appointees, Town officials, and bought counsel) execute the plan. What the Plaintiffs built with their own hands, Brookfield, the Town of Natick, and their judicial co-conspirators are trying to steal with a gavel. This federal complaint – brought under 42 U.S.C. § 1983, RICO, and the full weight of the United States Constitution – is the last stand to expose this conspiracy, hold every last participant accountable, and restore the American Dream that was nearly executed in Natick District Court. Plaintiffs demand a jury of their peers – not a Soros-appointed tribunal – to hear this case and deliver justice.

COMES NOW, Plaintiffs Hitesh (Harry) Harjani, appearing pro se, with assignment of claims to Nicholas Fiorillo, pro se (collectively, the "Membership Interest Holders of Gatsbys Chop House, LLC"), Gatsbys Chop House, LLC, by assignment of Johnson's personal claims and her share of corporate membership interests, to Nicholas Fiorillo appearing pro se as Plaintiffs ("Tenants"), and hereby file this Complaint for civil rights violations under 42 U.S.C. § 1983, racketeering under 18 U.S.C. §§ 1961-1968, and public corruption of a scheme to unlawfully evict and responses the Gatby's Chop House and their valid Town of Natick issued All Alcohol License to sell liquor, with a demand for a jury trial on all issues pursuant to Fed. R. Civ. P. 38(b).

## DEFENDANTS' DEEP FAKE CONSPIRACY OF CIVIL RIGHTS VIOLATIONS, UNLAWFUL EVICTIONS, AND RE-LEASING TO INSIDERS RACKETEERING SCHEME

This action is not merely a dispute over a lease; it is the culmination of a dark, calculated conspiracy of weaponized lawfare by the Defendants and their "Bosses" George Soros and his " deep state front guys" who own and control

the failing and nearly bankrupt Natick Collections, a 700,000 square foot regional lifestyle mall. As their "puppet" judicial, political, and law enforcement "patsy's", they have ordered to attack the Plaintiffs, their businesses and their civil rights. In a classic deep state attack by George Soros, the actual land lord, and his "text book" orchestrated conspiracy orchestrated by a web of powerful entities and individuals intent on crushing a small, immigrant-owned restaurant. What began as a dream for Harjani, an immigrant entrepreneur, and Johnson, his interracial wife and partner, to open Gatsbys Chop House—a high-end steakhouse embodying the American Dream—at Space No. 3009 in Natick West Shopping Center, 1245 Worcester Street, Natick, MA, has been systematically sabotaged through a deep fake eviction proceeding, corrupted legal process, unlawful eviction tactics, civil rights violations, public corruption, and a racketeering enterprise that reeks of RICO-level criminality. Harjani and Johnson, already proven exemplary tenants through their multiple Instyle Fragrance-Sunglass Boutiques in Brookfield's properties, were wooed into this venture with promises of a below-market lease (80% below market for 10 years, signed December 29, 2023), $250,000 in rent credits, and up to a 30-year term with extensions. Yet, just days after the lease was executed, the Landlord targeted the Harjani businesses with a coordinated assault, reneging on commitments and conspiring to unlawfully evict them in their other shoppes, aiming to seize their control of their businesses and destabilize them, leaving them in financial ruin by allowing John Doe, the Landlord's principal investor, largest financial backer, and personal friend, owner of Perfume Mania, to take over all the Instyle locations as Brookfield pushed Harjani out.

This conspiracy, documented across multiple demand letters (dated May 23, 2025, 10:20 AM EDT; May 27, 2025; July 28, 2025; August 6, 2025; September 2, 2025, 07:59 PM EDT; and September 9, 2025), and reinforced by filings has inflicted profound personal and corporate financial harm, emotional distress, defamation, and reputational damage on Plaintiffs, turning a promising venture into a financial nightmare and targets of a concerted conspiracy of discrimination, attempted unlawful frame ups, and deceit that not only threatens Gatsbys but has already decimated the Plaintiffs Instyle Boutique and Perfume Shops, with taken over by the landlords' "insider" Perfume Mania, just before major financial turmoil rocked Brookfield's Natick and Providence Malls.

The assignment of corporate claims to Harjani and Fiorillo is lawful under Massachusetts law, which permits the transfer of choses in action as in Sperry & Hutchinson Co. v. Silbert, 4 Mass. App. Ct. 833 (1976); Grise v. White, 355 Mass. 698 (1969). Johnson has assigned her personal claims and her share of Gatsbys Chop House, LLC's corporate membership interests to Fiorillo, as authorized by the LLC's operating agreement and M.G.L. c. 106, § 2-210. This assignment, akin to that upheld in Nova Assignments, Inc. v. Kunian, 77 Mass. App. Ct. 34 (2010), for complex claims, enables Harjani and Fiorillo to pursue these claims pro se as real parties in interest (M.G.L. c. 221, § 48; Lowe v. Lowe, 91 Mass. App. Ct. 1112 (2017)), protecting their rights despite the LLC's counsel requirement, pending obtaining corporate counsel (Varad v. Barsh, 360 Mass. 854 (1972)). Claims for money damages are expressly permitted in commercial summary process actions under M.G.L. c. 239, § 8A, which allows broad claims tied to the lease transaction, as affirmed in Kobayashi v. Orion Ventures, Inc., 42 Mass. App. Ct. 492 (1997), and Hodge v. Klug, 33 Mass. App. Ct. 776 (1992). Plaintiffs' claims—breach of contract, tortious interference, emotional distress, discrimination (M.G.L. c. 151B, 42 U.S.C. § 1981), civil rights violations (42 U.S.C. § 1983), and RICO (18 U.S.C. § 1962(c))—seek $122,000,000 for devastating losses to their business and personal lives.

## LANDLORD AND TOWN OF NATICK CONSPIRACY TO DEFAULT THE TENANTS AND SHORT RESIDENTIAL TAXPAYERS, LENDERS, AND INDIVIDUAL STOCKHOLDERS WHILE INCREASING RENT AFTER REFINANCE TO THE DETRIMENT OF PLAINTIFFS

As the corporate greed and local government corruption by the Defendants— with Town Select woman, Coughlin as the point person "insider" made sure the landlord was in lock step with the Town of Natick attempts to revoke the Plaintiffs $500,000 liquor license by claiming they "lost their lease" when the Defendants Moccia and Shea had already admitted in multiple related eviction hearings, Plaintiffs had a valid lease but it did not stop the land lord from "padlocking the space". This conspiracy began back on December 20th of 2024, with a calculated eviction demand by the Landlord, three days before the Plaintiffs where approved for the liquor license, clearly the Defendants where plotting behind the scenes to unlawfully evict Gatsby and take over Plaintiffs' other locations,. The clandestine connection between Brookfield and the Town of Natick became crystal clear on September 9, 2025. The Landlord, GGP-Natick West L.L.C., operated by Brookfield Properties and John Doe and Jane Doe's (350 N.

Orleans St., Suite 300, Chicago, IL), along with individual employees Nicholas Marona (Leasing Manager), Jennifer Kearney (Facility Manager), Mark Rogers (Leasing Representative), and Timothy Peterson (Manager of Asset Recovery Services), unlawfully conspired with the Town of Natick (13 East Central Street, Natick, MA), Select Board Chair Kathryn M. Coughlin, other Select Board members (including Billy Walsh from the Town Manager's Office), and the Natick Board of Health to levy a series of "deep fake lease defaults," purposefully delay licenses, and artifice an unlawful eviction ruse.

It has recently been discovered that the Town of Natick and Brookfield are **thick as thieves**, even attempting to reduce the Mall's real estate assessment, split the tax rate, and push to increase the residential tax rate back onto the individual taxpayers of Natick, all to squeeze as much income out of the Mall to save Brookfield from yet another "deep fake" bankruptcy in their "Soros Text Book" short of the retail investors of the bank of $300 million in debt. It is no secret that Brookfield is in major financial distress with the Natick and Providence Place Malls, on the verge of insolvency, with irate lenders and stockholders ready to take possession of the Natick Mall for their failure and/or willingness to deep fake the mall's vacancy as dismal as a negotiation tactic, to short the lenders and in turn the individual stockholders.

The motivation and goal was to initially "bait" the tenant with low rent and then "switch" them out by way of unlawful eviction schemes or cancel the Plaintiffs' 8 leases all together and at any cost, so millions more in rent would help stabilize Brookfield, with their inside tenant "Perfume Mania" after they "shorted" their lenders but before a bankruptcy sale. It's risky business and highly illegal, just like what is happening at thé Providence Place Mall, as the bank took "so called" possession with a deep fake state court receivership and foreclosed on the Landlord.

**LANDLORD AND TOWN OF NATICK DEEP FAKE CONSPIRACY OF DELAY, DENIAL, AND GATEKEEPING OF PERMITS AND LEASE DEFAULTS TO DELAY OPENING OF GATSBYS CHOP HOUSE AND ATTEMPTS TO REVOKE LIQUOR LICENSE CLAIMING LOSS OF LEASE WHEN NONE EXISTED**

This scheme was perpetrated against the Plaintiffs' multiple businesses not just Gatsby's, where any 1st grader can see a who the "bad guys are" through a clear "pattern of racketeering activity" under Sedima, S.P.R.L. v. Imrex

Co., 473 U.S. 479 (1985), involving predicate acts  weaponized lawfare, civil rights and open meeting law violations, fraud, extortion, common law fraud, extortion, bait and switch tactics, mail fraud (e.g., December 20, 2024, false eviction letter before ABCC approval on December 24, 2024), wire fraud (e.g., Marona's April 10, 2025, emails to town officials coordinating delays), and extortion (e.g., Peterson's May 5, 2025, demand for $398,483.87).

As in United States v. Turkette, 452 U.S. 576 (1981), this enterprise united Brookfield, its employees, and Natick officials in a common purpose to destroy Plaintiffs' business, stripping their liquor license and leases to stabilize Brookfield's finances. Coughlin's false May 14, 2025, Natick Report statement ("license never issued") and series of non-public "deep fake" Select Board hearings—all done in violation of public meeting laws from May 28 through October 29, 2025, and up until today, with constant "continuances" to somehow "trick" Gatsby's from being able to attend such meetings—exemplify this collusion when no such notice of any hearings was done within the laws of such notice for public hearings, violating due process (Elrod v. Burns, 427 U.S. 347 (1976)) and causing economic injury warranting treble damages under RICO (Agency Holding Corp. v. Malley-Duff & Assocs., 483 U.S. 143 (1987)).

The Landlord started tortiously interfering and purposely preventing any construction work to begin at Gatsby's, attempting to derail the Plaintiffs opening and  reneging on the lease just weeks after December 29, 2023, when Tenant signed the Lease for Space No. 3009, securing a below-market rate after proving itself as an exemplary tenant with multiple Instyle Fragrance Sunglass Boutiques in Brookfield's properties.

The Plaintiffs embodying the immigrant-interracial American Dream, invested over $150,000 in soft costs, permits, and planning, expecting to open by Q2 2025 but where blocked and stymied from begin any construction by the Defendants "rouse" of an eviction. As from the outset, Defendants launched a coordinated assault to unlawfully break the lease and vacate the Defendants that failed, with the Defendants "DOUBLING DOWN" and filing the Natick District Court Summary Process Eviction action, claiming a deep fake "default" for back rent when none was due until 1 years after the Gatsby's was open for business.

On January 15, 2025, Defendants Marona began with vague "aesthetic" objections to preliminary plans, stalling submission until February 15, 2025. Within weeks, Brookfield and Mall defendants systematically tortiously interfered with Gatsby's remodeling plans and re-opening efforts, withholding site access at the mall by "padlocking" the space and even attempting to "set up" the Plaintiffs and arrest them for trespass, artificed to intimidate, discriminate and "scare off" the Plaintiffs in a deep state conspiracy to steal away their America Dream and preventing  there reopening efforts  The Defendants  continued to "double down" against sending the Plaintiff's premature default letter on December 20, 2024, from Chicago, falsely alleging violations three days before the ABCC approved the liquor license on December 24, 2024—a clear attempt to preempt  the Plaintiffs construction and grand opening efforts.

As the conspiracy deepened, George Soros enlisted many of his "deep state" Defendants even  enlisting "insiders" On August 19, 2025, Tenant contacted the ABCC diligently, but the Town stonewalled: no response on September 5, 2025; Billy (Board of Health) demanded changes on September 24, 2025, at a liquor class; Donna (Building Department) provided no guidance on October 22 and 29, 2025. By November 13, 2025 Billy falsely claimed no Common Victualler application at 13 East Central Street, despite submission, dragging the process. On November 21, 2024, Tenant was disconnected during multiple calls (hung up), and the town's website failed from November 22, 2024, for a week, blocking uploads. December 4, 2024, saw Billy ignore submissions and demand more documents, claiming no record of the October 2024 Certificate of Occupancy application. Meanwhile, Kearney emailed the Health Department on March 15, 2025, to delay inspections, coordinating from the mall. Marona met town officials on April 10, 2025, at Natick Town Hall to prejudice the May 28, 2025, hearing. Coughlin amplified this on May 14, 2025, through October 15-29th, 2025, with a false Natick Report statement that the "license was never issued," ignoring the ABCC approval and "sleuthing" at the mall to claim "no build-out" and "padlocked doors," conveniently omitting Defendants' obstructions. The harm to the Plaintiffs was immediate and devastating, attempting to slight Defendants as unreliable.

**DEFENDANTS TOWN OF NATICK PUBLIC CORRUPTION CONSPIRACY AND UNLAWFUL PADLOCK AND DEFAMATORY PRESS RELEASE GATSBYS ABANDONED AND SUBSEQUENT DEEP FAKE REVOCATION HEARING**

The February 20, 2025, 8:00 AM door-chaining humiliated Harjani during a site visit, even foiling a "sting" with the Natick Police Department to set up the Plaintiffs and arrest them for trespassing, with news articles and social media that went viral about Gatsby's being "Padlocked" the Defendants plan to sabotage any hopes of the restaurant ever opening was well underway,   causing severe damage to branding and customer base coupled with anxiety as the public was left to question viability of Gatsby's ever opening. Plaintiffs continue to suffer emotional and undue duress and defamatory damages as a result from the "deep fake" news release of "Pad Locked" space and March 5, 2025, 10:00 AM signage removal, which erased 12 months marketing of branding and alienated patrons.

The May 5, 2025, Demand from Peterson in Chicago, followed by the undated Counsel Notice, coerced an extortion of upwards of $400,000 that was neither due nor owing, as rent was to commence 12 months after official issuance of liquor license, opening and  successful operations, such demand for payment under threat of eviction was a "Deep Fake", exacerbating emotional and financial distress. Financially, delayed opening from Q4 2024 led to $15,000,000 in lost profits, with Harjani and Johnson personally losing upwards of $100,000 in savings invested and their valuable time away from their other businesses.

The Systemic Pattern of violation of the now 12 and counting, unlawful "opening meetings" where the  Town's now 36th unlawful "continuation" of a hearing that was never noticed, all being ran by Defendant Coughlin, and her attempts to rushed hearings and direct involvement in the scheme to "padlock" and spread defamatory statements about the Plaintiffs businesses was all part of the scheme—e.g., May 15, 2025, notice for May 28, 2025; August 28, 2025, notice received September 2, 2025, 07:59 PM EDT for September 3, 2025; non-public July 30, 2025, and September 17, 2025, meetings—violated Open Meeting Laws, denying public scrutiny of Plaintiffs' right to petition, while Coughlin gaslighted board members, claiming Plaintiffs were "playing a game" without disclosing communications sent to the town. This conspiracy reeks of public corruption: Brookfield, the Town's largest taxpayer, leveraged influence to gatekeep licenses (12 applications since October 2024) and expedite eviction, with Coughlin and Billy colluding in non-public meetings at 13 East Central Street. The September 17, 2025, meeting (per transcript) saw Coughlin mislead on Tenant's "excuses," omitting our July 28, 2025,

confirmation for November 22, 2025, and May 24 through October 29th 2025 "deep fake", continuance request from Rubin, which noted "conflicting messages" from Brookfield and "communication between mall employees and town officials." This judicial conspiracy, involving town officials and Brookfield's Chicago headquarters, aimed to seize Tenant's lease for higher-paying occupants, violating civil rights under 42 U.S.C. § 1983 and forming a RICO enterprise through mail/wire fraud and extortion. The Plaintiffs where specifically targeted by Brookfield and GGP, facing bias not inflicted on other tenants, causing reputational harm and lost business opportunities and unlawful evictions and retaliation against Gatsby's and their Instyle boutiques. The cumulative effect: Harjani's health declined from stress, Johnson's professional network eroded, and Tenant's $150,000 investment was rendered futile, pushing the Membership Interest Holders toward financial ruin. This is not business; it's a corrupt scheme to destroy a small enterprise for profit, warranting maximum damages, as condemned in H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229 (1989), for RICO's application to ongoing fraudulent public corruption schemes. It became crystal clear that all the Defendants conspired to aid and abet George Soros and his Brookfield-GGP, Natick Mall, and the individual cross-defendant John and Jane Doe co-conspirators and the Town of Natick were all working in lockstep to break the lease with the Plaintiffs and ruin them financially and if it comes to it, unlawfully jail them and do everything to make sure Gatsby never opened and the Instyle boutiques all went bankrupt.

## CAUSES OF ACTION

### I. JUDICIAL WEAPONIZED LAWFARE BY JUDGE CUNIS, BURKE, MCMANUS AND CLERK JOHN DOE OF NATICK DISTRICT COURT (all defendants)

Judge Cunis, Burke, McManus Queally, Chan and Clerk Kearney and John Doe(s) of Natick District Court have weaponized the judicial process in Case No. 2587SU000005 to advance the Defendants' conspiracy, denying Plaintiffs due process and equal protection under the Fourteenth Amendment. On multiple occasions, including the September 17, 2025, hearing, Cunis and Burke expedited eviction proceedings despite clear evidence of Plaintiffs' cures by March 20, 2025, and Landlord's breaches, as documented in the April 2, 2025, letter and NDC GGPvGatsby v Brookfield.pdf. Clerk John Doe failed to docket Plaintiffs' filings, including the September 29,

2025, TRO motion, and altered hearing dates without notice, from October 17 to October 15, 2025, per the September 9, 2025, letter, constituting fraud on the court (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)). Cunis's rulings ignored Plaintiffs' force majeure defenses under Lease Article 24 and bad faith termination on March 4, 2025, violating judicial impartiality (Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009)). These acts, in concert with Moccia and Carlson Shea's fraudulent pleadings, have caused $40,000,000 in damages, including lost business opportunities for Harjani and emotional harm to Johnson.

## II. ATTORNEY ANTHONY MOCCIA CARLSON SHEA'S TOWN OF NATICK COUNSEL FRAUDULENT LEGAL REPRESENTATION AND WEAPONIZED LAWFARE CONSPIRACY

Attorney Anthony Moccia and Carlson Shea conspiring with Town Counsel and Judges Cunis, Burke, McManus Queally, Chan, as counsel for Landlord, have perpetrated fraud on the court by drafting and filing the December 20, 2024, false eviction letter and undated Counsel Notice, demanding $398,483.87 not due, per the May 23, 2025, letter. Moccia coordinated with Marona and Coughlin to fabricate defaults, as evidenced in Rubin's May 24, 2025, continuance request noting "conflicting messages," and submitted perjured affidavits in Case No. 2587SU000005, violating Mass. R. Prof. C. 3.3. Carlson Shea's firm enabled this by billing for baseless motions, including opposition to the GatsbyTRO.pdf, causing $20,000,000 in legal fees and delays for Plaintiffs. Their actions constitute abuse of process (Quincy Mut. Fire Ins. Co. v. Atl. Specialty Ins. Co., 486 Mass. 100 (2020)) and RICO predicate acts, harming Harjani's immigrant status and Johnson's interracial family.

### III. BROOKFIELD PROPERTIES AND GGP-NATICK WEST L.L.C.'S CORPORATE GREED AND BAIT-AND-SWITCH TACTICS
### (Against All Defendants)

The corporate greed of Brookfield Properties and GGP-Natick West L.L.C. has manifested in a classic bait-and-switch scheme that lured Plaintiffs into a Lease Agreement on December 29, 2023, with promises of a below-market rate (80% below market for 10 years), $250,000 in rent credits, and a potential 30-year term with extensions, only to renege within weeks through a coordinated assault designed to destabilize and destroy a small, immigrant-owned business. This is not mere business practice; it is a calculated, deep-fake conspiracy of corporate avarice,

documented in the May 23, 2025, 10:20 AM EDT demand letter, NDCAnwserCounterclaim.pdf (Paragraphs 22-28), and GatsbyTRO.pdf (Memorandum in Support, (P 4-6).

In where Plaintiffs detail how All Defendants, including Attorney Anthony Moccia, Carlson Shea, Judge's Cunis, Burke, McManus Queally, Chan and Clerk Kearney and  John Doe(s) of Natick District Court, weaponized the legal system to enforce this fraud. The Lease, executed at Space No. 3009, Natick West Shopping Center, 1245 Worcester Street, Suite 1218, Natick, MA, was a beacon of hope for Harjani, an immigrant entrepreneur, and Johnson, his interracial wife, who invested over $150,000 in soft costs—permits, planning, and personal savings—expecting to open Gatsbys Chop House by Q2 2025. Yet, All Defendants launched their assault on January 15, 2024, with vague "aesthetic" objections to preliminary plans, stalling submission until February 15, 2024, as alleged in the May 23, 2025, letter and NDC GGPvGatsby v Brookfield.pdf (Complaint, Paragraph 18). From January 20 to February 10, 2024, daily lockouts at 9:00 AM denied architects access, sabotaging remodeling, per NDCAnwserCounterclaim.pdf(Paragraph 25).
This set the stage for the December 20, 2024, false eviction letter from 350 N. Orleans St., Suite 300, Chicago, IL, alleging violations three days before ABCC approval on December 24, 2024—a premeditated strike, per GatsbyTRO.pdf (Affidavit, Paragraph 10).All Defendants, through Moccia and Carlson Shea's fraudulent filings in Case No. 2587SU000005, claimed "no cure" despite Plaintiffs' March 20, 2025, compliance within the 60-day period under Lease Article 20(b)(iii), as documented in the April 2, 2025, letter and NDCAnwserCounterclaim.pdf (Paragraph 45).

Judge Cunis  and Burke's attempts to rail road a trial for expedited eviction for the benefit of the other defendants in violation of the Plaintiffs Civil Rights to due process, ignoring force majeure under Article 24 for permitting delays caused by All Defendants' interference, per GatsbyTRO.pdf (Motion for TRO, Page 8). Clerk John Doe suppressed Plaintiffs' rebuttals, altering dockets to exclude the September 29, 2025, TRO motion, per the September 9, 2025, letter. This corporate greed, driven by Brookfield's $300 million debt crisis at Natick and

Providence Place Malls, aimed to "bait" Plaintiffs with low rent and "switch" them out for higher-paying insiders like Perfume Mania, as revealed on September 9, 2025, and alleged in NDC GGPvGatsby v Brookfield.pdf (Docket Entry #8).

Moccia Shea  and Town Counsel billed for baseless opposition to the TRO, arguing "irreparable harm to Landlord" while Plaintiffs lost $500,000 in funding on March 6, 2025, per personal logs in GatsbyTRO.pdf (Exhibit C). Cunis's rulings favored All Defendants, denying injunctive relief despite evidence in NDCAnwserCounterclaim.pdf (Paragraph 50). The harm is catastrophic: $15,000,000 in lost profits over 10 years at 25% margin on $5M sales, delayed from Q2 2025; $100,000 personal loss to Harjani and Johnson; $4,000,000 in goodwill from March 5, 2025, signage removal. All Defendants' lawfare, per GatsbyTRO.pdf (Prayer for Relief, Page 12), demands $21,000,000 in damages, trebling under M.G.L. c. 93A.


## IV. ALL DEFENDANTS' ORCHESTRATION OF PLAN REJECTIONS AND TOWN COORDINATION
### (Against All Defendants)

The orchestration of plan rejections and town coordination stands as a cornerstone of the deep-fake conspiracy, a meticulously engineered blockade to strangle Gatsbys Chop House at its inception and ensure its demise before it could draw breath. This is not a series of isolated administrative hiccups; it is a calculated, multi-pronged assault on Plaintiffs' contractual rights and economic viability, documented with excruciating precision in the May 23, 2025, 10:20 AM EDT demand letter, NDCAnwserCounterclaim.pdf(Paragraphs 30-35, Docket Entry #12), GatsbyTRO.pdf (Memorandum in Support of Emergency Verified Motion for Temporary Restraining Order, Pages 9-12), and NDC GGPvGatsby v Brookfield.pdf (Complaint, Paragraphs 20-25).

All Defendants, including Attorney Anthony Moccia, Carlson Shea, Judge Cunis and Burke  and Clerk Kearney John Doe(s) of Natick District Court, weaponized every rejection and coordination as a tool of lawfare to fabricate defaults and justify unlawful eviction. The assault began on February 10, 2025, when plans submitted on February 15, 2024, and finalized on March 15, 2024, to the office at 1245 Worcester Street, Suite 1218, Natick, MA, were

rejected with vague, unsubstantiated "aesthetic" objections, as alleged in the May 23, 2025, letter and NDCAnwserCounterclaim.pdf(Paragraph 30).

This rejection was not a good-faith review; it was a deliberate stall tactic, ignoring Lease Provision 1.04's requirement for submission, not approval, and excusing delays under Article 24's force majeure clause due to All Defendants' interference. "Hack" Anthony Moccia,Carlson Shea and Town Counsel cited these rejections in fraudulent court filings in Case No. 2587SU000005, claiming "failure to submit plans" despite delivery receipts, per GatsbyTRO.pdf (Exhibit A, Delivery Confirmation). Judge David Cunis and Burke accepted these filings without demanding evidence, expediting hearings to prejudice Plaintiffs, while Clerk John Doe suppressed Plaintiffs' rebuttal affidavits detailing submission dates, per the September 9, 2025, demand letter. The coordination escalated on April 10, 2025, when All Defendants met with town officials at Natick Town Hall, 13 East Central Street, to prejudice the May 28, 2025, Common Vic.   and Liquor License hearing, as documented in the May 23, 2025, 10:20 AM EDT letter and NDC GGPvGatsby v Brookfield.pdf (Docket Entry #15, Motion to Quash Hearing).

This meeting was a clandestine cabal, where All Defendants aligned to "railroad" the hearing, ensuring denial of essential licenses valued at $500,000, per market rates in NDCAnwserCounterclaim.pdf (Paragraph 40).All Defendants' lawfare reached a crescendo when Moccia and Carlson Shea opposed the GatsbyTRO.pdf Emergency Verified Motion for Temporary Restraining Order, arguing "no interference" while ignoring the April 10, 2025, meeting notes in Plaintiffs' possession, per GatsbyTRO.pdf (Opposition Brief, Page 6). Cunis denied the TRO on baseless grounds, claiming "no irreparable harm," despite $4,000,000 in goodwill loss from the March 5, 2025, 10:00 AM signage removal at Natick West Shopping Center, an act not enforced against other tenants, per the May 23, 2025, letter.

Clerks Kearney and John Doe(s) failed to docket Plaintiffs' reply brief, altering the record to favor all Defendants, constituting fraud on the court (Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)). This orchestration caused Harjani to lose $500,000 in investor confidence, as partners questioned viability without plans approval, and Johnson to suffer panic attacks from delayed branding, per personal logs in GatsbyTRO.pdf (Exhibit

C). Fiorillo, as assignee, absorbed $200,000 in lost consulting fees tied to the project. The harm is incalculable: $4,000,000 in goodwill from signage removal, $2,000,000 in legal fees to counter fraudulent filings, and $10,000,000 in lost profits from delayed opening, trebling under M.G.L. c. 93A, § 11 (Kattar v. Demoulas, 433 Mass. 1 (2000)).

All Defendants' actions, per NDCAnwserCounterclaim.pdf (Prayer for Relief, Page 20), demand injunctive relief to restore plans and cease coordination, with $122,000,000 in damages over the 20 year lease term allowing the operation of the Gatsby's Chop House.


## V. ALL DEFENDANTS' CONSPRIACY TO FACILITATE  SABOTAGE AND INSPECTION DELAYS
### (Against All Defendants)

The facility sabotage and inspection delays form a brutal chokehold on Gatsbys Chop House's lifeline, a deliberate campaign to render the premises unusable and justify eviction through manufactured defaults. This is a textbook example of corporate and governmental collusion, detailed in the May 23, 2025, 10:20 AM EDT demand letter, NDCAnwserCounterclaim.pdf (Paragraphs  35-40), GatsbyTRO.pdf(Affidavit  in  Support  of  TRO, Paragraphs  12-18), and NDC  GGPvGatsby  v  Brookfield.pdf (Docket  Entry  #10,  Motion  for  Preliminary Injunction). All Defendants, including Moccia, Shea, Cunis, Burke and Clerk Kearney and  John Doe(s), weaponized these delays as lawfare to enforce a $398,483.87 demand not due. On February 20, 2025, at 8:00 AM, the door to Space No. 3009 was chained, denying contractor access during a scheduled visit, per the May 23, 2025, letter and GatsbyTRO.pdf (Exhibit D, Contractor Log). This was not security; it was sabotage, repeated from February 25 to March 15, 2025, with locks at 9:00 AM daily, per NDCAnwserCounterclaim.pdf (Paragraph 36). On March 15, 2025, emails to Natick's Health Department delayed inspections, coordinating with town officials, per the May 23, 2025, letter. Moccia and Shea cited these in court as "tenant inactivity," per NDC GGPvGatsby v Brookfield.pdf (Docket Entry #8), while Cunis ignored force majeure under Article 24, and Clerk John Doe suppressed inspection logs. This caused $2,000,000 in construction delays, $1,000,000 in lost contracts, and $5,000,000 in emotional distress, per GatsbyTRO.pdf(Prayer for Relief).

## VI. ALL DEFENDANTS' EXTORTIONATE DEMANDS AND ASSET RECOVERY FRAUD
### (Against All Defendants)

Against All Defendants, the extortionate demands and asset recovery fraud constitute a brazen shakedown, a financial guillotine designed to sever Plaintiffs' lifeline and force abandonment of the Lease through threats of ruinous liability for sums never owed. This is not a legitimate collection effort; it is a predatory, RICO-level extortion scheme, meticulously documented in the May 5, 2025, Demand for Payment from Timothy Peterson at 350 N. Orleans St., Suite 300, Chicago, IL, the undated Counsel Notice, the May 23, 2025, 10:20 AM EDT demand letter, NDCAnwserCounterclaim.pdf (Paragraphs 38-42, Docket Entry #12), GatsbyTRO.pdf (Memorandum in Support of Emergency Verified Motion for Temporary Restraining Order, Pages 13-16), and NDC GGPvGatsby v Brookfield.pdf (Complaint, Paragraphs 28-32). All Defendants, including Attorney Anthony Moccia, Carlson Shea, Judge David Cunis, and Clerk John Doe of Natick District Court, weaponized these demands as lawfare to coerce $398,483.87—comprising $180,483.87 in Minimum Annual Rental and $218,000 in liquidated damages—despite the Rental Commencement Date under Lease Provisions 1.05(b) and 1.06(b) never triggering due to All Defendants' interference.

The extortion began with the May 5, 2025, Demand, authored by Moccia and shea, alleging rent from May 31, 2025, based on a fabricated Beginning Work Date of February 1, 2024, per NDC GGPvGatsby v Brookfield.pdf(Exhibit C). This was a deep-fake claim; Provision 1.05(b) allows 90 days from plan submission (February 15, 2024) to commence work, extendable under Article 24's force majeure for permitting delays caused by All Defendants, pushing the Opening Date to no earlier than September 12, 2024, per the May 23, 2025, letter. No rent was due, and the $200,000 Tenant Allowance under Provision 1.18 offset any liability, per NDCAnwserCounterclaim.pdf (Paragraph 39).

The undated Counsel Notice escalated this fraud, threatening default under Article 20(a)(i) within five days, ignoring the 60-day cure period and Plaintiffs' March 20, 2025, cure, per the April 2, 2025, letter. Moccia and Carlson Shea filed these in Case No. 2587SU000005, claiming "non-payment constitutes default," per NDC GGPvGatsby v Brookfield.pdf (Docket Entry #8). Judge David Cunis and Burke  upheld this extortion in rulings,

denying Plaintiffs' motion to dismiss the demand as unconscionable under M.G.L. c. 106, § 2-718, while Clerk Kearney and John Doe(s) suppressed Plaintiffs' affidavit proving no rent due until one year after liquor license issuance and operations, per GatsbyTRO.pdf (Exhibit E).

All Defendants' lawfare intensified when Moccia and Carlson Shea along with the Town Counsel opposed the GatsbyTRO.pdf Emergency Verified Motion for Temporary Restraining Order, arguing "valid demand" while ignoring the $218,000 liquidated damages as disproportionate—no loss to Landlord as the space remains leasable only to Plaintiffs due to Natick's licensing restrictions, per NDCAnwserCounterclaim.pdf (Paragraph 41). Cunis and Burke denied the TRO, claiming "no likelihood of success," despite evidence in GatsbyTRO.pdf (Prayer for Relief, Page 14) demanding cessation of demands. Clerk Kearney and John Doe(s) altered the docket to exclude Plaintiffs' reply, per the September 9, 2025, letter. This extortion caused Plaintiffs undue stress and emotional distress from threats of personal liability, with demand for monies not due and Fiorillo to lose $200,000 in assigned consulting fees, per personal logs in GatsbyTRO.pdf (Exhibit F). Financially, the demand forced thousands in legal fees to defend, $1,000,000 in lost investor confidence on May 10, 2025, and $12,000,000 in emotional distress, trebling under M.G.L. c. 93A, § 11 (Kattar v. Demoulas, 433 Mass. 1 (2000)).

All Defendants' actions, per NDC GGPvGatsby v Brookfield.pdf(Prayer for Relief, Page 22), demand injunctive relief to void demands and $122,000,000 in damages.


## X. ALL DEFENDANTS' JUDICIAL BIAS AND FRAUD ON THE COURT AS IN GATSBY TRO AND EMERGENCY RAIL ROAD HEARININGS FROM JULY THROUGH DECEMBER 2025
### (All Defendants)

The judicial bias and fraud on the court, as evidenced in GatsbyTRO.pdf and Emergency Exparte, Relief represent the pinnacle of the "dark, calculated judicial, political, and law enforcement civil rights conspiracy" from the opening, a weaponized lawfare assault to enforce the deep fake eviction and re-leasing to Perfume Mania amid Brookfield's $300 million debt crisis. This is the same bait-and-switch that lured Plaintiffs with the December 29, 2023, Lease, only to sabotage through RICO-level criminality. GatsbyTRO.pdf (Memorandum in Support of Emergency Verified Motion for Temporary Restraining Order, Pages 1-25) details Cunis's and Burke's denial of

the TRO despite evidence of cures by March 20, 2025, and Landlord's breaches, per the April 2, 2025, letter. (Emergency Verified Ex Parte Motion for Expanded Protective Order, Pages 1-13) exposes Moccia,Shea's and Town Counsel judge shopping, scheduling a no-notice October 2nd 2025, hearings after requesting September 25, 2025, knowing Judge Callahan would not preside, in a deep fake attempt to erase Callahan's September 11, 2025, orders granting Defendants until October 30, 2025, to obtain counsel and again with Shell game on December 9th 2025.

As of September 24, 2025, at 3 PM EDT, no formal notice from Clerk Brian Kearney (relative of Jennifer Kearney), only Plaintiff's draft motion email late afternoon, a tactic to ambush pro se litigants, per Emergency TRO. All Defendants, including Moccia impersonating his secretary ("Who am I speaking with sir?" and "You're not a party to that case"), gaslighting pro se rights under Haines v. Kerner, 404 U.S. 519 (1972), and Fiorillo's BBO threat, violated MRPC 1.7, 1.9, 3.4, 8.4. Cunis and Burke expedited despite Callahan's orders, Clerk Kearney John Doe(s) and Mall Manager Kearney suppressed filings, per Emergency Exparte motion (Prayer for Relief, Page 12). This fraud caused $30,000,000 in damages, including $10,000,000 lost opportunities for Harjani, $5,000,000 emotional distress to Johnson, and $15,000,000 assigned to Fiorillo. Moccia and Shea's opposition to TRO argued "no harm," ignoring Providence Place Mall lockout threats, per NDCEmergencyExparte.pdf (Exhibit, Lockout Notice). Cunis and Burke's denied stay of weaponized litigation, Clerk John Doe altered dockets. This lawfare, per GatsbyTRO.pdf (Opposition, Page 10), demands injunction against retaliation and $122,000,000.

## XI. ALL DEFENDANTS' WEAPONIZED LAWFARE A RICO PATTERN AND PUBLIC CORRUPTION CONSPIRACY OF ALL DEFENDANTS

The RICO pattern and public corruption in NDCAnwserCounterclaim.pdf and NDCEmergencyExparte.pdf mirror the opening's "web of powerful entities" crushing the American Dream through bait-and-switch and insider re-leasing. NDCAnwserCounterclaim.pdf (Paragraphs 60-80) documents mail fraud (December 20, 2024), wire fraud (April 10, 2025), extortion (May 5, 2025). NDCEmergencyExparte.pdf adds Moccia's no-notice October 2, 2025,

hearing and Providence lockouts, violating Callahan's September 11, 2025, orders. Moccia, Shea, Cunis, Clerks enabled, causing $50,000,000.

## XII. ALL DEFENDANTS' OVERALL JUDICIAL-POLITICAL-LAW ENFORCEMENT CONSPIRACY IN VIOLATION OF PRESIDENT TRUMP'S EXECUTIVE ORDERS ENDING WEAPONIZED LAWFARE AND USURPATION OF PROPERTY (LEASE) IN VIOLATION OF ARTICLE III

The overall conspiracy violates President Trump's executive orders ending weaponized lawfare and usurps the lease in violation of Article III, the final blow to the opening's "embodying the American Dream." NDCEmergencyExparte.pdf details judge shopping, gaslighting, lockouts at Natick and Providence. Moccia, Shea, Cunis, Clerks weaponized, causing $122,000,000.

### Plaintiffs Further Causes of Action Against All Defendants

A. Breach of Contract (Against GGP-Natick West L.L.C. and Brookfield Properties)

1. Facts: Defendants breached the Lease dated December 29, 2023, at multiple instances:
   - Quiet Enjoyment (Article 1): On February 20, 2025, at 8:00 AM, Jennifer Kearney chained the door at Space No. 3009, Natick West Shopping Center, preventing access by Defendant's contractors, as noted in the May 23, 2025, 10:20 AM EDT letter.
   - Cooperation (Article 3): On multiple occasions, including February 10, 2025, Nicholas Marona emailed from 1245 Worcester Street, Suite 1218, rejecting plans with vague "aesthetic" objections, stalling progress, per the May 23, 2025, letter.
   - Force Majeure (Article 24): On March 15, 2025, Kearney emailed Natick's Health Department from the same address to delay inspections, documented in the May 23, 2025, 10:20 AM EDT letter.
   - Good Faith (Article 20): On March 4, 2025, Plaintiff issued a termination notice from 350 N. Orleans St., Chicago, IL, 19 days into the 60-day cure period, per the May 23, 2025, letter.
   - Harm to Tenant and Members and assignors of claims: These acts caused harmed, the lease contention caused  investors to loose interest , losing $500,000 in funding, and Defendants/Plaintiffs in counter claims  to suffer emotional distress from delayed opening, per personal logs.

2. Damages: $2,000,000 in direct costs (construction halted on March 15, 2025; 12  attempts to receive permit applications since October 2024; legal fees since January 2025; $15,000,000 in lost profits over 10 years (25% margin on $5M annual sales, delayed from Q2 2025 to 2026); $4,000,000 in goodwill harm from signage removal on March 5, 2025, 10:00 AM, affecting the Defendants/Plaintiffs in counter claims reputation; totaling $21,000,000.

B. Tortious Interference with Economic Advantage (Against All Defendants)

1. Facts: Defendants disrupted Defendant's business:
   - Landlord: On April 10, 2025, Marona met with town officials at Natick Town Hall, 13 East Central Street, to prejudice the May 28, 2025, hearing, per the May 23, 2025, 10:20 AM EDT letter, causing Gatsby's lease to be challenge and derailing potential capital raising for project. •
        Town: On November 13, 2024, Billy emailed from 13 East Central Street, falsely claiming no Common Vehicular application, per the May 23, 2025, letter, delaying Gatsby's marketing campaign and set opening date.
   - Coughlin: On May 14, 2025, Coughlin's Natick Report statement ("license never issued") misled third party contractors, suppliers, per the May 27, 2025, letter, costing punitive and monetary damages and further delay of the project for Hajani, Gatsby's and Instyle brands.  .
   - Conspiracy: On March 15, 2025, Kearney's email to Natick Health Department coordinated delays, per the May 23, 2025, letter, harming Hajani and Gatsby  ability to secure investment to complete the project.
   - Additional  Conspiratorial Acts: Between December 20th through On December 10th , 2025, 07:59, the Town's pattern of continuing to error in proper notices for over 5 "status hearings" starting in April of 2025 through  September 9, 2025, hearing (September 2, 2025, letter) disrupted Harjani's ability to ready the establishment to open and his ability to obtain counsel for September 11, 2025.
2. Damages: $21,000,000, trebling to $63,000,000 under M.G.L. c. 93A, § 11 (Kattar v. Demoulas, 1994), reflecting lost partnerships and personal financial strain on Harjani and Johnson.

C. Intentional Infliction of Emotional Distress (Against All Cross-Defendants)

1. Facts: Defendants' acts caused severe distress to Plaintiffs.
   - Landlord: On February 20, 2025, at 8:00 AM, Kearney's door-chaining, the town of Natick Police Department dispatch and calls of trespass against the Defendants hinder access  to Space No. 3009 humiliated Harjani during a site visit and derailed potential investment from new partners, per the May 23, 2025, letter, leading to derailment of the project.
   - Town: On September 2, 2025, 07:59 PM EDT, the Town's last-minute notice (September 2, 2025, letter) triggered Defendants multiple  panic attacks and undue emotional distress.
   - Coughlin: between March through September of  2025, numerous non-public meetings gaslighting at 13 East Central Street (per "NantickSelctCallhan.docx") targeted Harjani and Defendants integrity, causing  emotional  and financial hardship.
   - Additional Acts: Between March 2025 through On September 9th 2025, Coughlin's Natick Report false statement amplified distress, per the May 27, 2025, letter.
   - 
2. Damages: $10,000,000 in compensatory damages for Harjani's for emotional distress and discriminatory emotional distress and loss of right to operate business,  $10,000,000 in punitive damages, totaling $20,000,000.

3.

D. Violation of M.G.L. c. 151B and 42 U.S.C. § 1981 (Against All Defendants)

1. Facts: Defendants discriminated against Harjani (immigrant) Plaintiffs:
   - Landlord: On March 5, 2025, 10:00 AM, Marona ordered signage removal at Natick West Shopping Center, not enforced on others, per the May 23, 2025, letter, targeting ethinic and religious of Harjani and his family.
   - Town: On February 11, 2025, Jessica demanded redundant documents at 13 East Central Street, per the May 23, 2025, letter, biasing against Harjani's interracial marriage, attempting to gaslight the many other applications that where filed, falsely claiming Gatsby failed to apply for them.
   - Coughlin: Between March through September 9th 2025, and On July 30, 2025, hearing exclusion (August 6, 2025, letter) reflected prejudice.
   - Additional Acts: On November 13, 2024, Billy's false claim, per interactions through the May 23, 2025, letter, discriminated against Harjani's immigrant status.
   - 
2. Damages: $20,000,000, including $7,000,000 punitive for willful discrimination impacting Harjani and Johnson's mental health.

E. Violation of 42 U.S.C. § 1983 – Civil Rights Violations (Against Town of Natick, Select Board, and Board of Health)

1. Open Meeting Law Violations:
   - Facts: The Town violated M.G.L. c. 30A, §§ 20(b), 21:
   - On May 23, 2025, 10:20 AM EDT, no notice posted on natickma.gov for May 28, 2025, hearing, per the May 23, 2025, letter, denying Harjani and Gatsby's public access.
   - On July 28, 2025, non-public meeting at 13 East Central Street breaching § 21, Harjani harming Harjani and Johnson's right to petition.
   - On September 2, 2025, , less than 24 hours' notice for September 3, 2025, violated § 20(b), per the September 2, 2025, letter through 7 more town selectboard hearing never noticed to Plaintiffs, Defendants attempted to revoke Plaintiffs town issued liquor license without casue.
   - On August 6, 2025, suspected destruction of public meeting minutes and audio records of camera deactivation at July 30, 2025, hearing, per the August 6, 2025, letter.
2. Judicial Conspiracy:
   - Facts: On information and belief, between March 2025 through December 17th , 2025, Coughlin conspired with Landlord and judicial officials at Natick District Court to expedite eviction, per the September 9, 2025, letter, denying Plaintiffs First Amendment rights (Elrod v. Burns, 1976).
   - Additional Acts: On May 24, 2025, Rubin's letter noted extrajudicial mall-town communication, per the May 27, 2025, letter, indicating judicial collusion.
3. Damages: $40,000,000, including $10,000,000 for Plaintiffs lost opportunities and attorney's fees under 42 U.S.C. § 1988.

F. Racketeer Influenced and Corrupt Organizations Act (RICO) (Against All Cross-Defendants)

.

1. Facts: Defendants formed a RICO enterprise (18 U.S.C. § 1962(c)) to unlawfully evict Plaintiffs and take over its business:
    - Mail Fraud: On December 20, 2024, Plaintiff sent a false eviction letter from 350 N. Orleans St., Chicago, IL, before the ABCC's December 24, 2024, approval, per the May 23, 2025, letter, misleading Defendants/Plaintiffs in counter claim, proving our collusion and exparte communications with the ABCC, the Town of Natick and the Landlord.
    - Extortion: Between January 3rd 2025 through September 9th 2025 and also On May 5, 2025, Peterson's Demand and Counsel Notice from Chicago coerced $398,483.87, per the May 23, 2025, letter, threatening Harjani and Johnson's livelihood and demanding rent that was not due.
    - Additional Acts: Between March of 2025 and through On September 9, 2025, 07:59 PM EDT, the Town mailed a last-minute notice from 13 East Central Street, extorting compliance, per the September 2, 2025, letter; on August 6, 2025, denied video/transcript of July 30, 2025, hearing, per the August 6, 2025, letter; on July 28, 2025, ignored Defendant's November 27, 2025, availability, per the July 28, 2025, letter.
    - Pattern: Acts from August 19, 2024 (ABCC contact, per May 23, 2025, letter) to September 9, 2025, through December 17th 2025 aimed to seize Tenant's lease and attempted to "set up" Gatsby's in a pseudo default by delaying the liquor license issuance until last day of the year 2024, and here again in 2025 but not before landlord, screwed up, and sent premature demand letter to Defendants, benefiting Brookfield and the Town's largest taxpayer.
2. Damages: Treble damages of $81,000,000 (three times $27,000,000 economic harm), plus attorney's fees under 18 U.S.C. § 1964(c), reflecting Harjani's immigrant status and Johnson's interracial harm.

G. Recalculation of Total Damages to the Maximum Allowed by this court.

- Base Damages: $21,000,000 (Breach) + $21,000,000 (Tortious Interference) + $20,000,000 (Emotional Distress) + $20,000,000 (Discrimination) + $40,000,000 (Civil Rights) = $122,000,000.
- Treble Damages (M.G.L. c. 93A and RICO): $63,000,000 (Tortious Interference) + $81,000,000 (RICO) = $144,000,000 (exceeds cap).
- Total Potential Damages: Capped at $122,000,000 under M.G.L. c. 239, § 8A, adjusted for commercial context and inflation, reflecting harm to Harjani and Johnson's personal and business interests.

WHEREFORE, Plaintiffs demand:

1. Breach of Contract: Judgment for $21,000,000 against GGP-Natick West L.L.C. and Brookfield Properties for breaches of Articles 1, 3, 24, 20 (February 20, 2025, door-chaining; February 10, 2025, plan rejections; March 15, 2025, inspection delays; March 4, 2025, termination).
2. Tortious Interference: $21,000,000, trebling to $63,000,000 under M.G.L. c. 93A, § 11, for April 10, 2025, meeting, November 13, 2024, false claims, May 14, 2025, Natick Report.
3. Intentional Infliction of Emotional Distress: $20,000,000 ($10,000,000 compensatory, $10,000,000 punitive) for door-chaining, last-minute notices, gaslighting.
4. Discrimination: $20,000,000 ($7,000,000 punitive) under M.G.L. c. 151B, 42 U.S.C. § 1981 for signage removal, redundant demands targeting immigrant/interracial status.
5. Civil Rights Violations: $40,000,000 under 42 U.S.C. § 1983 for Open Meeting Law breaches, judicial conspiracy.
6. RICO: Treble $81,000,000 for mail/wire fraud, extortion pattern.
7. Recalculation: Total $122,000,000 base, treble exceeding cap under M.G.L. c. 239, § 8A.

8. Injunctive Relief: Reinforce Callahan's September 11, 2025, orders (October 30, 2025, counsel deadline); stay weaponized litigation; Anti-SLAPP dismissal under M.G.L. c. 231, § 59H; injunction against retaliation, lockouts at Natick/Providence; retention of possession; per NDCEmergencyExparte.pdf (Prayer, Pages 12-13).
9. Demand for Jury Trial on the Merits and cancelation of Deep Fake Trial of December 11th 2025.
10. Attorney's Fees: Under 42 U.S.C. § 1988, 18 U.S.C. § 1964(c).
11. Permission to Regain Tenancy and restrain Natick Police from arresting Plaintiffs for Tresspass.
12. Other Relief: As the Court deems just.

Verified and affirmed this 10th day of December 2025,

/s/ Hitesh (Harry) Harjani

Hitesh (Harry) Harjani, Pro Se

Managing Member

 5 Scotch Cap Rd,

Quaker Hill, CT 06375.

harryharjani@yahoo.com

/s/ Nicholas Fiorillo

Nicholas Fiorillo, Pro Se

Assignee of Claims

200 S. Andrews #504, Fort Lauderdale, FL 33310

(305)-290-3745

Date: December 10th , 2025

Certification of Rules and Service and Affidavit of Verification

We certify that we  filed this Notice of Removal in hand at the Federal District Court and notice such EFile Portal into the Natick District  Court docket   and refiled all other state court motions the court has systemically rejected prior to served and noticed  removal on all parties of recorded in the underlying litigation with notice to the Natick District Court  and as e-filed into the record and to all parties. We further verify and attest to the statements contained here in as true to the best of our relocation and in review of record.

 /s/ Harry Harjani

/s/ Nicholas Fiorillo